# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00399-CV

**Cold Spring Granite Company, Appellant**

**v.**

**Mark L. Karrasch and Dakota D. Karrasch, Appellees**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 20299-A, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

Cold Spring Granite Company appeals from the trial court=s order denying its application for a temporary injunction to halt the construction of a house being built for Mark and Dakota Karrasch. We will affirm.

### Factual and Procedural Background

Cold Spring=s application for an injunction against the Karrasches stems from ongoing litigation.[1] The underlying litigation arose because Wilderness Cove, which owns the surface and a one-half granite interest in the property at issue, desired to develop approximately thirty acres fronting Lake LBJ (Athe subdivision@). Cold Spring desired to have the same property available as part of its granite reserves to quarry. These uses being incompatible, the trial court has set a partition trial to begin in December 2002.

---

[1] The litigation has already resulted in this Court=s opinion in *Wilderness Cove, Ltd. v. Cold Spring*

In August 2000, the trial court issued a temporary injunction ancillary to the underlying litigation.[2] This injunction acknowledged Cold Spring=s claim to the granite, Wilderness Cove=s surface and mineral ownership, and Wilderness Cove=s development activities. The trial court refused to enjoin Wilderness Cove from developing the property, but did enjoin Wilderness Cove from performing any blasting or other development work that would cause deep cracking of the granite. The order allowed Wilderness Cove to remove surface granite as necessary for certain purposes such as roadways with an accounting for any granite removed. It also enjoined Cold Spring from conducting mining activities other than taking core samples. In April of 2002, Cold Spring filed its application for a temporary injunction to halt construction on Lot 33 of the subdivision, the lot owned by the Karrasches.

---

*Granite Co.*, 62 S.W.3d 844 (Tex. App.CAustin 2001, no pet.). In *Wilderness Cove*, this Court determined that Cold Spring owned a granite interest in an approximately 300-acre tract in Burnet County and held that Cold Spring=s interest was a severable dominant mineral estate which gave Cold Spring the right to enter the property and quarry the granite. *Id*. at 849.

[2] After the September 2000 order, Cold Spring also sought to halt development in March 2001, August 2001, and April 2002. Relief was denied each time. None of the earlier orders were appealed. The Karrasches note that at the time that Cold Spring requested the injunction against construction on their lot, they had already constructed a boat dock with piers embedded in bedrock under the lake, boathouse, 250-foot seawall, sidewalks, and poured the slab for the house.

**Discussion**

*Temporary Injunction*

To be entitled to a temporary injunction, the applicant must show a probable right of recovery in a trial on the merits, and a probable injury in the interim. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). Probable injury includes the elements of imminent harm, irreparable injury, and no adequate remedy at law. *University of Tex. Med. Sch. v. Than*, 834 S.W.2d 425, 428 (Tex. App.CHouston [1st Dist.] 1992, no writ). The party seeking the injunction bears the burden of proving all of these elements. *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890 (Tex. App.CHouston [14th Dist.] 2000, pet. dism=d w.o.j.).

In an appeal from an order granting or denying a request for a temporary injunction, our review is confined to the validity of the order that grants or denies the injunctive relief. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.CAustin 2001, no pet.); *Center for Econ. Justice v. American Ins. Ass=n*, 39 S.W.3d 337, 343-44 (Tex. App.CAustin 2001, no pet.). The decision to grant or deny the injunction is within the sound discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Walling*, 863 S.W.2d at 57; *Synergy*, 63 S.W.3d at 561. A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

In deciding whether the trial court has abused its discretion in denying or granting a temporary injunction request, the reviewing court may neither substitute its judgment for that of the trial court nor consider the merits of the underlying lawsuit. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Synergy*, 63 S.W.3d at 564; *Center for Econ. Justice*, 39 S.W.3d at 344. It must review the evidence in the light most favorable to the order and must indulge all reasonable inferences in favor of the decision. *Center for Econ. Justice*, 39 S.W.3d at 344; *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.CAustin 2000, no pet.).

In the absence of specific findings of fact and conclusions of law, the trial court=s order must be upheld on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862; *Universal Health Servs.*, 24 S.W.3d at 577. The reviewing court Acannot reverse a trial court=s order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court=s decision.@ *Universal Health Servs.*, 24 S.W.3d at 576 (citing *CRC-Evans Pipeline Int=l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.CHouston [1st Dist.] 1996, no writ)); *see Goldome Credit Corp. v. University Square Apts.*, 828 S.W.2d 505, 508 (Tex. App.CAmarillo 1992, no writ).

### *The Application to Restrain the Karrasches*

Cold Spring contends that the presence of a house on Lot 33 threatens its ability to exercise its rights as the owner of the dominant mineral estate. Cold Spring acknowledges that it can physically remove the structure, albeit at greater expense than if the property were unimproved. The real harm from

the improvements, it argues, is that the partition proceeding will be tainted because a jury would be reluctant to partition the property in a way that would require the destruction of an existing house.

Cold Spring argues that any partition of the granite will have to treat Lot 33 as a discrete unit because Wilderness Cove has conveyed all of its interest to the Karrasches. Therefore, Wilderness Cove and the Karrasches no longer have any common interests in that lot. *See First Nat=l Bank v. Texas Fed. Sav. & Loan Ass=n*, 628 S.W.2d 497, 498 (Tex. App.CTexarkana 1982, writ ref=d n.r.e.) (joint ownership prerequisite to partition). Thus, it argues, the trial court will not be able to Aadjust the equities@ between Cold Spring and the Karrasches by awarding Cold Spring a granite interest in property owned by someone other than the Karrasches. The Karrasches argue that Wilderness Cove and the various lot owners are proceeding as a single entity and are not requesting a partition among themselves.

Cold Spring is both tardy and premature in its argument that the partition proceeding will be tainted by the presence of the Karrasches=improvements on Lot 33: tardy in that an unappealed temporary injunction is already in place setting out the terms and conditions of any future partition proceeding, and premature in that the effective pleading before the trial court at the time of the temporary injunction hearing did not take the same position regarding partition that Cold Spring now takes in this appeal.

### *Order Governing Partition*

Cold Spring=s argument for relief depends on its position that as a matter of law, the granite under Lot 33 must be partitioned between Cold Spring and the Karrasches because Wilderness Cove divested itself of all of its interest. However, a temporary injunction was in place that set the terms under

**5**

which any sale occurred.  The temporary injunction order of September 12, 2000, deals with four tracts in

the J.R. Johnson Survey No. 19 in Burnet County, Texas, totaling approximately 329.55 acres.[3]  It then

refers to the approximately thirty acres under development.  In paragraph 4(e) the injunction states:

> that should Wilderness Cove proceed to develop the Property during the pendency of this
> litigation, any such development shall not be deemed to alter the current status quo or rights
> of the parties; it is the Court=s intent that if partition is reached, it be as of the status of the
> land unimproved.

Neither Wilderness Cove nor the Karrasches dispute that this order controls the partition of this property.

And, in its sixth amended petition, the live pleading at the time of the hearing on the application for

injunction, neither did Cold Spring.

---

[3] The record and briefs contain varying descriptions of the land involved.  This order refers to 329.55 acres.  At times, the Karrasches refer to this land as 305 acres.  They refer to the same tract of land. Further, during these proceedings, Wilderness Cove acquired a granite interest in an additional 300 acres in which Cold Spring owns an interest.  The trial court has joined the tracts for purposes of the partition trial. Cold Spring moved to sever; the trial court overruled that motion.

In its sixth amended petition, Cold Spring complains of the sale of certain lots, including that of the Karrasches, after the trial court=s order of November 21, 2000, declaring Cold Spring=s rights in the granite. In its cause of action for partition, however, Cold Spring first contends that Wilderness Cove=s suggestion that partition be by sale is improper. It then pleads that partition in kind is appropriate and Aas the Court has previously ruled, any such division must occur as if the property were undeveloped.@ Cold Spring asserts that the recent purchases of lots in the thirty-acre development should be disregarded in determining the partition because the defendants purchased with full knowledge of the prior orders of the trial court.[4]

*Application*

---

[4] It is only in its seventh amended petition, filed after the temporary injunction hearing, that for the first time Cold Spring pleaded that each individual lot must be partitioned, as the ownership interests in each lot vary, and Wilderness Cove no longer has an ownership interest in any individual lot that has been sold. However, this pleading was not before the trial court at the time of the hearing on the temporary injunction order from which this appeal arises.

The order denying the temporary injunction simply stated that the application was denied. There were no specific findings of fact or conclusions of law requested or filed so we may uphold the order on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862. As factors in denying the temporary injunction the trial court could have considered: an injunction controlling the manner of partition was already in place; Cold Spring acknowledged in the live pleadings before the trial court that this order was controlling; and Cold Spring requested a partition of, at the least, *183.9 acres, not merely Lot 33*.[5] The trial court could have concluded that Cold Spring had not met its burden to show any imminent harm or irreparable injury from the continued construction of the Karrasches= house or a probable right to recover granite from Lot 33. Further, the trial court did not have to accept as evidence Cold Spring=s speculation about the mind-set of a future partition jury or its assumption that a future jury would be unable to follow the trial court=s instructions.[6]

---

[5] Cold Spring sought a partition in kind of the granite on the Asubject 183.594 acre tract which lies above the 825 foot elevation contour (the normal shoreline of Lake LBJ).@ The 183.594 acres are part of a 278.941-acre tract, 95.347 acres of which are inundated by Lake LBJ. All are part of the 300-acre tract covered by the court=s September 2000 order.

[6] Cold Spring argues that a jury would never allow a partition that called for the destruction of an existing house. However, on the facts of this case it seems equally likely that the Karrasches would receive little sympathy from a jury. They were warned that any improvements might be destroyed. They have been participants in this litigation and have never claimed a lack of notice.

**Conclusion**

There is evidence in the record to support the trial court=s decision.  Accordingly, we hold that the trial court did not abuse its discretion in denying Cold Spring=s application for temporary injunction and affirm the trial court=s order.**[7]**

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed:   October 31, 2002

Publish

---

**[7]** Cold Spring filed a motion for temporary relief ancillary to the filing of this interlocutory appeal.  *See* Tex. R. App. P. 29.3.  We overrule the motion.

9